Young *et al.* *v.* Phillips *et al.*

(*Jackson,* April Term, 1936.)

Opinion filed May 2, 1936.

L. H. WALKER and JOHN FITE ROBERTSON, both of Lebanon, for appellant.

WALTER S. FAULKNER, of Lebanon, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill in this cause was filed in November, 1928, against the executors of the estate of Alexander Young, seeking an accounting and final settlement, the appointment of the clerk and master as receiver, and judgment against the executors for certain allegedly improper disbursements. Pertinent facts are thus recited in the opinion of the Court of Appeals:

"Alex Young, a resident of Watertown, Tenn., died in 1921. He left a valuable estate, consisting of real estate, stocks, bank stock and notes. He left surviving him, his widow and one son, Turner Young, who had one minor child, Alexander Young.

"He left a will, creating a trust of most of his estate, providing that his son, Turner Young, should be supported out of the income of the estate, the estate to go at the death of Turner Young to his grandson, Alexander Young and any other children that might be born to

Turner Young. T. A. Young and J. D. Phillips were appointed executors of the will, and it was provided that after the settlement of the estate they should qualify as trustees of same for the life of Turner Young. The powers and duties conferred upon the executors and trustees by the will were as follows:

" 'I nominate and appoint T. A. Young and J. D. Phillips my executors and give them full power to sell all real estate I may own at my death except the home where I now reside in Watertown, Tennessee, and make warranty deeds to same, to make sale either privately or publicly as they may deem best. However, it is my desire that my business property in Watertown shall be held as long as they shall think best. Full power is given my executors to collect all notes, stocks or bonds and convert same into cash and sell all real estate and convert into cash, when they shall think to the best interest of my estate. My executors shall make final settlement as my executors in accordance with the law. And then qualify as trustees and they are hereby duly appointed trustees to do the same. They will take charge of the fund left my son Turner Young for life and they will loan the same out upon good farming lands in Wilson County, Tennessee, at not more than one-half of real value. They will pay to him and family, but not more. The said Turner shall not have the right to mortgage, sell, transfer, or encumber his life estate in said fund given to trustees for the maintenance and support of him and family. . . .

" 'I nominate and appoint T. A. Young and J. D. Phillips trustees to take charge of the entire fund left my son Turner for life and request them to give bond in some good bonding company as trustees.'

"The will was probated on November 8, 1921. The executors made bond and qualified and took possession of the estate."

The executors answered, explaining that their delay in making final settlement (which would have been a settlement merely between themselves as executors and themselves as trustees) had been caused by various litigation, etc., and taking issue on all charges of negligence, waste, etc. The chancellor ordered settlement to be made with the clerk and master who was duly appointed receiver. An accounting was had by which it was shown that something less than $60,000 had been collected and disbursed, proper vouchers being shown for every disbursement, and the accounts of the executors were approved, except as to a certain $1,000 disbursement, for which, with interest since the filing of the bill, a decree was given against the executors; they were also denied certain fee and commission allowances.

Appeal was taken by the executors to the Court of Appeals, complaining, by proper assignments, of so much of the decree of the chancellor as disallowed three items: (1) A credit for a disbursement of $1,000 being a payment by the executors of an assessment on bank stock which passed to them under the will; (2) additional compensation above commissions previously deducted; and (3) counsel fees for services rendered in this suit.

The Court of Appeals affirmed the chancellor. *Certiorari* has been granted and argument heard.

█ █ We are not of opinion that the action of the lower courts on items (2) and (3) should be disturbed. Both are matters primarily for the discretion of the chancellor. However, we are of opinion that the executors should be credited with the $1,000 disbursement.

While it is true that the stock was not technically subject to a double liability assessment, as is the case with national bank stock and some state bank stocks, and in this view the payment was "voluntary," as found by the lower courts, and while it is also true that the original stockholding was, in final result, not saved as an investment by this payment of the assessment made thereon, we are convinced, not only that the outlay was made in the utmost good faith, but in the exercise of prudence and good judgment, when viewed in the light of the conditions at the time presented.

In 1923, following the trying financial period between 1920 and 1923, of which the court takes judicial notice, and which is also shown in the proof, the superintendent of banks called on this bank, for the better protection of its depositors, to strengthen its capital. A failure to respond to this demand would have probably resulted in the closing of the bank, with consequent loss of the stock. It appears that following the making of this contribution to the bank's capital the bank had several more or less successful years, so that dividends were paid on the stock. It is properly suggested that to the extent of these dividends the executors received back the advancement made.

But, however this may be, another element enters into the consideration of the matter which in our opinion is determinative. The financial panic of 1920 came before the death of Mr. Alex Young, and, in the exercise of his prerogative and obligation to see that the depositors were protected, the state superintendent of banks at that time exacted of this bank a bond in the sum of $75,000. This bond Mr. Young, a stockholder and director of the bank, signed as a surety. When he died, this bond was

outstanding, and when the demand for the stock assessments was made, it was still outstanding. That this bond had been signed by Alex Young and was outstanding as a contingent liability is shown by the deposition of T. A. Young (Transcript 117), and the report of the clerk and master (Transcript 184), and this fact is not disputed on the record. The executors were confronted with this situation, so obviously pregnant with danger, not of loss of the stock investment in the bank only, but of a very large liability against the general estate, that it was the clear duty of the executors to take the course they did. The result was that the bank ran on for years, and when it finally failed, in 1928, and suit was brought on this $75,000 bond, liability thereon was avoided, it is said in argument, by reliance on the statute of limitations.

It must be borne in mind that trustees are not insurers, and that the rule applicable to both affirmative and negative conduct ''is universal that an agent or a trustee is only held to the exercise of good faith and due diligence.'' *Lee* v. *First National Bank,* 150 Tenn., 275, at page 289, 263 S. W., 89, 93, citing *Dietz* v. *Mitchell,* 12 Heisk. (59 Tenn.), 676, 678; 25 R. C. L., 1280. As aptly said, ''Any other rule would cast upon a trustee a burden no prudent man would ever assume.'' 25 R. C. L., p. 1280. It is significant that the *Dietz Case, supra,* involved, as here, an executor's accounting, and the facts of that case otherwise make the decision particularly pertinent. We paraphrase and apply a paragraph from the opinion by NICHOLSON, C. J., as follows: ''To determine whether the executor ought to have refused'' to pay this assessment, ''it is necessary to recur to the condition of the country at the time,'' the risk of making

absolute and maturing a very heavy surety obligation, and, generally, "to those circumstances that would be likely to control the action and the judgment of an ordinarily prudent man." And, in confirmation of the rule that the situation as it appeared at the time must be considered in testing the liability of trustees, we quote the following from *In re Fulton Trust Co.*, 257 N. Y., 132, 177 N. E., 397, 398, 77 A. L. R., 499, 502: "It is an obvious truth that 'a wisdom developed after an event, and having it and its consequences as a source, is a standard no man should be judged by' . . . and it is impossible to say that trustees are wanting in sound discretion 'simply because their judgment turned out wrong.' " Citing (HOLMES, J.) *Green* v. *Crapo*, 181 Mass., 55, 62 N. E., 956. The facts must be considered as they presented themselves at the time the executors acted, and not from the illumined viewpoint of subsequent events. *United States* v. *American Bell Telephone Co.*, 167 U. S., 224, 261, 17 S. Ct., 809, 818, 42 L. Ed., 144; *Briggs* v. *Spaulding*, 141 U. S., 132, 155, 11 S. Ct., 924, 35 L. Ed., 662; *Bates* v. *Dresser*, 251 U. S., 524, 40 S. Ct., 247, 64 L. Ed., 388; *Tradesman Publishing Company* v. *Knoxville Wheel Company*, 95 Tenn., 634, 665, 32 S. W., 1097, 31 L. R. A., 593, 49 Am. St. Rep., 943. As MR. JUSTICE BREWER said in *United States* v. *American Bell Telephone Co.*, "a wisdom born after the event is the cheapest of all wisdom. Anybody could have discovered America after 1492."

Learned counsel invoke the concurrent finding rule. This rule applies to disputed facts. We do not question the finding of facts, but rather the application of the governing rules of law to the facts, which relate to the discretion vested in trustees and their liability where

good faith, prudence, and diligence appear. We are of opinion that the general statements quoted from the authorities cited (3 Williams on Executors, 327, and 2 Schuler on Wills, Executors and Administrators) are subject to exceptions, which, under the conditions and circumstances herein shown, should be applied.

On the whole case, we think justice will be done by allowing credit for this item to the executors, and the decrees will be modified to this extent and in all other respects affirmed.