**Martha Cuneo REED, Plaintiff-Appellant,**

v.

**Albert F. ROBILIO, Victor L. Robilio, and John S. Robilio, Jr., As Executors of the Estate of Mrs. Jennie G. Robilio, John S. Robilio, Rose Ann Robilio, Florence Rita Robilio Radogna, and Union Planters National Bank of Memphis, Tennessee, Defendants-Appellees.**

No. 18326.

United States Court of Appeals
Sixth Circuit.

Sept. 17, 1968.

Frederick Bernays Wiener, Washington, D. C., for appellant, Chandler, Manire, Johnson & Harris, Memphis, Tenn., Davis, Polk & Wardwell, Kissam & Halpin, New York City, of counsel.

Jack Petree, Memphis, Tenn., for appellees, Evans, Petree, Cobb & Edwards, Memphis, Tenn., on brief, for Albert F. Robilio, Albert F. Robilio, Victor L. Robilio and John S. Robilio, Jr., and Union Planters Nat. Bank of Memphis, Marion S. Boyd, Jr., Memphis, Tenn., on brief, Canada, Russell & Turner, Memphis, Tenn., of counsel.

Before WEICK, Chief Judge, and PECK and COMBS, Circuit Judges.

JOHN W. PECK, Circuit Judge.

In 1961, plaintiff-appellant brought this derivative action on behalf of the estate of her deceased parents alleging that defendants, as partners in the Memphis, Tennessee, partnership of Robilio & Cuneo, breached the fiduciary obligation owed the estate of her father. He had been a partner of the firm, and a breach of the fiduciary obligations owed

her mother, who had also been a partner, was also alleged. Subsequent to trial, the cause was dismissed for lack of diversity jurisdiction and plaintiff appealed. This court reversed and remanded for a decision on the merits (376 F.2d 392 (1967)). Upon remand, the District Court held in favor of defendants (273 F.Supp. 954 (1967)), and plaintiff has again appealed.

Under a 1943 partnership agreement, plaintiff's father, Thomas A. Cuneo, owned a 30.66% interest in the Robilio & Cuneo partnership which manufactures and sells macaroni products, and plaintiff's mother, Zadie S. Cuneo, owned a 19.34% interest. The remaining 50% interest was owned by Albert F. Robilio and his now deceased mother, Jennie G. Robilio (Jennie G. Robilio died subsequent to commencement of this action and her executors have been substituted as parties defendant by order of the District Court). This partnership agreement remained in effect until Mr. Cuneo's death in 1959.

Under the terms of Mr. Cuneo's will, the Union Planters National Bank was appointed executor of his estate and was authorized to sell the 30.66% interest in the partnership. Negotiations with the Robilios resulted, and the executor subsequently accepted the Robilios' offer to purchase the interest for $317,000 upon the condition that the offer be approved by the Probate Court of Shelby County, and by Mrs. Cuneo and plaintiff. Thereafter, on March 7, 1960, a bill of sale was executed to the Robilios for Mr. Cuneo's partnership interest. In the present suit plaintiff sought to have a constructive trust imposed upon her father's interest, on the ground that the Robilios breached their fiduciary obligation to the estate of Mr. Cuneo by concealing and failing to disclose to the executor material facts regarding the fair value of the interest, and by purchasing that interest at a grossly inadequate price. Plaintiff also sought to have the partnership agreement executed by her mother and the Robilios subsequent to Mr. Cuneo's death canceled and rescinded on the grounds

that the agreement unfairly restricts the class of persons to whom her mother's interest could be transferred, that the agreement gave the Robilios the option to purchase her mother's interest at an inadequate price upon the attempted transfer to persons outside the restricted class, and that the agreement was executed at a time when her mother was seriously ill and unable to comprehend the nature and significance of the agreement. The cause was tried to the court without a jury and, as noted above, the court held for defendants and dismissed the complaint as to both causes of action.

The record shows that shortly after Mr. Cuneo's death, Mr. Albert F. Robilio (hereinafter referred to as "Robilio" in the singular), the member of his family who actively participated in the management of the business, discussed with the partnership's auditor the appropriate methods of evaluating Mr. Cuneo's interest. Four formulae suggested by the auditor yielded valuations ranging from approximately $228,000 to $317,000. It was this latter amount that was offered to, and accepted by, the Bank for the 30.66% interest. Moreover, as found by the District Court, Robilio invited the representatives of the estate to make a personal inspection of the books, records and assets of the firm, and told them that he had directed his employees to furnish any information sought by the estate. Robilio also furnished the executor to Mr. Cuneo's estate with the financial reports of the partnership for the five year period preceding Mr. Cuneo's death.

The executor of the estate, Union Planters National Bank (hereinafter the "Bank"), had been the recipient of the partnership's banking business for over thirty years, and Mr. Herbert, the officer of the Bank's Trust Department who was responsible for handling the Cuneo estate, had on previous occasions evaluated and sold corporate and partnership businesses in his capacity as Trust Officer. The record also shows that the Bank had knowledge of all material facts bearing

on the value of the firm and Mr. Cuneo's 30.66% interest.

In its opinion, the District Court thoroughly discussed the nature and scope of the fiduciary duty a surviving partner owes the estate of a deceased partner as follows:

"One of the relationships which is fiduciary in nature is that which exists between partners. Partners, by virtue of their business association, repose trust and confidence in each other. Hence, in their partnership affairs, one partner may not take any advantage of his associate. Brooks v. Martin, 69 U.S. ([2] Wall.) 70, 17 L.Ed. 732 (1864).

"Although death dissolves the partnership, the fiduciary relationship continues. The surviving partner retains his fiduciary duty to the deceased partner's estate. Joseph v. Mangos, 192 Iowa 729, 185 N.W. 464 (1921).

\*　　\*　　\*　　\*　　\*　　\*

"[T]he standard of good faith remain[s] flexible. It cannot be said that the surviving partner, regardless of the circumstances, is to be held to an unbending procedure in discharging his fiduciary obligation. Equity predicates the fiduciary duty upon the assumption that the surviving partner will have a superior knowledge of the business and that the estate will be dependent upon him to receive fair treatment. Tennant v. Dunlop, 97 Va. 234, 33 S.E. 620 (1899). Thus, the surviving partner's conduct must be judged within the context of the knowledge and experience of the person with whom he deals. Cardoner v. Day, 253 F. 572 (D.Idaho 1918).

"Nevertheless, the leading cases reveal that certain conduct will violate the fiduciary duty as a matter of law. All of the authorities agree that the surviving partner may neither misrepresent nor conceal material facts. See Note, Fiduciary Duties of Partners, 48 Iowa L.Rev. 902 (1963). Concealment, in this sense, is not limited to active concealment. The duty may be breached by silence. Stark v. Reingold, 18 N.J. 251, 113 A.2d 679 (1955). Most of the courts, however, phrase this proposition in terms of 'disclosure.' For example, in perhaps the leading case in this area, the Supreme Judicial Court of Massachusetts held in Malden Trust Co. v. Brooks, 291 Mass. 273, 197 N.E. 100, 106 (1935), that the surviving partner has a duty to:

\* \* \* *disclose* voluntarily all within his possession or knowledge *from which a sound judgment* as to the value of the share of the deceased partner in the partnership property and his claims against the partnership might be found. [Emphasis supplied.]

"Similarly, the Supreme Court of Virginia stated in Tennant v. Dunlop, 97 Va. 234, 33 S.E. 620 (1899), that:

[h]aving generally a superior knowledge of the assets and their value, it is his bounden duty, in purchasing the interest of the deceased partner, to acquaint his representative with full information as to the assets, and the facts from which their value may be estimated or inferred. It is not sufficient that he does not withhold or conceal such information, but it is incumbent upon him to disclose voluntarily all within his possession or knowledge from which a sound judgment as to the value of the interest may be formed.

"Plaintiff's interpretation of these, and similar cases, forms the basis of her charge that the Robilios violated their fiduciary duty. At the trial plaintiff established that Albert Robilio failed to mention numerous matters. Without listing them separately again, these matters which plaintiff alleges that the Robilios failed to disclose relate to: (1) good will; (2) consumer acceptance and demand; (3) possible growth of the firm; (4) the quality of personnel; (5) the potential earning future of the business; and (6) trends in the macaroni industry." 273 F.Supp. at 959–61.

The District Court then held that silence does not constitute a breach of good faith if the surviving partner could reasonably assume that the estate already had knowledge of the material facts, and that Robilio accordingly did not breach his fiduciary duty by failing to disclose matters relating to good will, consumer acceptance and demand, and the quality of the sales force, since these matters were reflected by the financial reports of the partnership. The court further held that Robilio was not required to volunteer an opinion on matters which were not reflected on the financial reports of the partnership, such as matters pertaining to possible growth of the firm, the potential earning future of the firm, and the trends in the macaroni business, stating:

"[T]he Court holds that the failure to express an opinion on these matters did not breach the fiduciary duty. The only case of which the Court is aware specifically directing itself to this question contains the following language:

He [the surviving partner] was not required to express himself relative to matters merely of speculation or surmise, but in so far as he chose to give an opinion he was bound to act honestly and in good faith.

Cardoner v. Day, supra, [253 F.] at 577. Nevertheless, the Court is not prepared to accept the language of *Cardoner* without qualification. Under some circumstances an opinion from the surviving partner may be called for. If the matter has a significant bearing on the value of the partnership interest, and if the personal representative of the estate is unable to form an opinion from available information, good faith may demand that the surviving partner express himself." 273 F.Supp. at 962.

The Court then concluded that no opinion was required of Robilio since there had been independent representation of the beneficial interest by a personal representative who was experienced in the management and sale of trust property (See Malden Trust Co. v. Brooks, 291 Mass. 273, 197 N.E. 100 (1935); O'Brien v. O'Brien, 294 Ky. 793, 172 S.W.2d 595 (1942); Turner v. Leathers, 191 Tenn. 292, 232 S.W.2d 269 (1950); Williams v. Jones, 54 Tenn.App. 189, 388 S.W.2d 665 (1963)), and who Robilio was entitled to assume was well versed with respect to all material aspects of the partnership business.

■ The implicit premise underlying plaintiff's argument that the Robilios breached their fiduciary duty as surviving partners by failing to disclose "the glowing prospects of the business" is that defendants knew or reasonably should have known that the firm would in fact prosper. Although there were many factors of which the Bank was aware that indicated that the firm should prosper, the partnership was nevertheless confronted with several potential problems. The most obvious difficulty, of course, was to adjust to the loss of Mr. Cuneo, who "as far as any operating of the business was concerned * * * was the last man to say 'yes' or 'no'." Robilio, the remaining partner who actively participated in the management of the business, was not in good health. Moreover, shortly after Mr. Cuneo's death, Robilio accepted the resignation of the partnership's sales manager, tendered for health reasons. The sales manager, the highest paid employee of the firm, had worked directly under Mr. Cuneo and it was expected that his termination would mean the loss of one of the largest customers of the firm. Further, the partnership's plant had been marked for condemnation as part of a Memphis redevelopment program, necessitating the relocation of the factory. The contemplated move to a newly built factory would require the borrowing of funds and entailed many possible difficulties which might have interrupted production and seriously hindered the business. Finally, in 1959, apprehension existed because the Federal Trade Commission had been investigating Robilio & Cuneo under the Robinson-Patman Act

because of certain promotional discounts given to some customers. In view of these uncertainties, it is understandable that Robilio might well refrain from voluntarily prognosticating a rosy future for the firm. Actually, during the three year period following Mr. Cuneo's death, the net sales of the partnership were down appreciably from the previous three year norm, and profits fluctuated greatly. In any event, we find that the District Court properly held on the facts that no expression of opinion was required of Robilio, and that the Robilio defendants did not breach any fiduciary duty owed the estate of Mr. Cuneo by failure to disclose any material fact bearing on the value of the 30.66% interest.

The District Court correctly held that disclosure alone would not satisfy the fiduciary duty (273 F.Supp. p. 963):

"The most exacting disclosure would not suffice if the price paid were grossly inadequate. On the other hand, mere inadequacy of price does not constitute a breach of duty. Townes v. Townes, 270 F. 744 (5th Cir. 1921). And, by the same token, even though the price paid is fair, a breach of the fiduciary duty may be found. Brooks v. Martin, 69 U.S. ([2] Wall.) 70, 17 L.Ed. 732 (1864). The fairness of the purchase price is one of the factors to be considered in determining whether the fiduciary duty was discharged. Malden Trust Co. v. Brooks, 291 Mass. 273, 197 N.E. 100 (1935)."

Several expert witnesses testified at trial as to the value of the Robilio & Cuneo partnership. A brief summary of this evidence is as follows:

| Witness | Value of Entire Firm | Value of 30.66% |
|---------|---------------------|-----------------|
| Corson | $1,781,000—1,944,000 | To the Robilios: $712,000—778,000 |
| | | To an Outsider: $546,000—596,000 |
| Emmett | $ 950,000 | $247,650 |
| Hoskins | $ 606,000 | $186,000 |

Because of the lack of qualification, Rothchild, the auditor of the partnership who submitted the figures upon which Robilio's offer was based, was not considered an expert witness. Further, the trial court dismissed Hoskin's appraisal which was below book value as being "patently unreasonable." Thus the District Court relied primarily upon the testimony of Corson and Emmett. The appraisals of the firm's future earnings by each of these two experts were very close, and the principal points of difference centered around the capitalization ratio thought to be applicable, and on the question of whether the partnership had excess working capital. No useful purpose would be served by repeating the District Court's complete analysis of the question of valuation, with which we agree, and reference is here made to 273 F.Supp. at 963–966 for that portion of the opinion. It is sufficient to note that the actual value of the partnership interest in dispute was found by the District Court to be in the range of $300,000 to $340,000. This determination is substantiated by the testimony of Herbert, the Trust Officer of the Bank who handled the interest in dispute, who placed a value of from $270,267 to $300,000 on the 30.66% interest formerly owned by Mr. Cuneo. Herbert also testified that Mr. Cuneo had at the time his will was

executed stated that he valued the entire Cuneo family interest of 50% at $500,-000. Herbert further stated that as Trust Officer he had never sold a partnership interest for more than book value.

■ Although plaintiff disavows reliance upon the use of hindsight (See Young v. Phillips, 170 Tenn. 169, 93 S.W.2d 634, 104 A.L.R. 975 (1936); O'Brien v. O'Brien, supra,) she has in this court as well as in the District Court "made much of the admittedly profitable years which followed the sale of the partnership interest." However, it is here determined that the District Court's findings as to valuation are supported by substantial evidence and are not clearly erroneous under Rule 52(a), F.R.Civ. P. E.g., Associated Press v. Taft-Ingalls Corp., 340 F.2d 753 (6th Cir.), cert. denied, 382 U.S. 820, 86 S.Ct. 47, 15 L.Ed.2d 66 (1965). The conclusion that the agreed sales price of $317,000 must be considered a fair price will therefore not be disturbed.

■ Plaintiff's final contention in support of the first cause of action is that the sale of the partnership interest was vitiated because attorney Waring's representation of both Mrs. Cuneo and the Bank in the proceedings leading up to the sale involved a conflict of interests. This conflict is said to arise between Mrs. Cuneo's right to buy the interest and the Bank's right to sell it. We agree with defendants that no actual conflict arose, because when Mrs. Cuneo declined to exercise her option to purchase her late husband's partnership interest, it was to her advantage that the Bank fulfill its obligation to the estate by selling the interest for as much as possible. However, assuming arguendo that a conflict in fact existed, such cases as Tisdale v. Tisdale, 34 Tenn. 596 (1855) and Tennessee Farmers Mut. Ins. Co. v. Hammond, 43 Tenn.App. 62, 306 S.W.2d 13 (1957), relied on by plaintiff, do not support the proposition that a transaction with which an attorney is involved will be voided merely because the attorney is representing conflicting interests. This argument is accordingly found to be lacking in merit.

Plaintiff seeks in the second cause of action the recision and cancellation of the partnership agreement executed between her mother and the defendants subsequent to her father's death. This agreement provides in pertinent part that plaintiff's mother, Mrs. Cuneo, could only sell, transfer or bequeath her 19.34% interest in the partnership to members of her immediate family, which at the time the agreement was executed numbered seven; that upon the transfer of this interest by Mrs. Cuneo or her assigns or devisees to any person outside of the designated class of persons, the Robilio partners had the option to purchase the interest at book value plus 10%; and that in computing book value of this 19.34% interest for purposes of the purchase option, no value was to be placed on the firm's goodwill, trade name or going concern value.

■ Plaintiff initially claims that Mrs. Cuneo was mentally incompetent when she signed the agreement. While the surgeon who had previously operated upon Mrs. Cuneo opined that she was incompetent at the time the agreement was executed, Mrs. Cuneo's brother and her attorney testified she was not. On this evidence the District Court found that Mrs. Cuneo was mentally competent. This finding is not clearly erroneous (Rule 52(a), F.R.Civ.P.), and will not here be disturbed.

■ Plaintiff also complains that the agreement unduly limited to seven the number of persons to whom Mrs. Cuneo could transfer her interest, while under a similar provision the number of persons to whom the Robilio partners could transfer their respective interests exceeded thirty. The agreement is further claimed to be inequitable and therefore in violation of defendants' fiduciary obligation to their then partner, Mrs. Cuneo, because of the alleged shocking undervaluation of the partnership interest under the purchase option provisions. The

District Court found that plaintiff had shown no more than that the Robilios were attempting to protect themselves from being burdened by an unwanted partner, and that none of the provisions in the agreement were unfair or unreasonable to Mrs. Cuneo. Not only are these conclusions supported by the record, we are unable to find any persuasive evidence upon which plaintiff's contrary contentions might be based. Plaintiff's effort to establish the ineffective assistance of counsel by the attorney who represented Mrs. Cuneo during the extended period of negotiations leading up to the execution of the agreement also fails for lack of evidentiary support. It is here determined that the District Court properly found that defendants breached no fiduciary duty to Mrs. Cuneo as alleged by plaintiff in the second cause of action.

In accordance with the foregoing, the judgment of the District Court dismissing the complaint should be affirmed.

Affirmed.