Morris Kozak and Florence Kozak v. Commissioner.
Kozak v. Commissioner
Docket No. 6365-69.
United States Tax Court
T.C. Memo 1971-167; 1971 Tax Ct. Memo LEXIS 165; 30 T.C.M. (CCH) 717; T.C.M. (RIA) 71167; July 19, 1971, Filed Theodore Berger, 120 S. LaSalle St., Chicago, Ill., and Gerald Brown, for the petitioners. Lloyd S. Kamps, for the respondent. SCOTT Memorandum Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1966 in the amount of $2,179.95. The only issue for decision is whether legal fees in the amount of $4,237.70, paid by petitioners in connection with litigation concerning the adjustment of property rights between parties to an annulled marriage are deductible either as an ordinary and necessary business expense under section 162, I.R.C. 1954, [1] or as *166 a nonbusiness expense for conservation or maintenance of property under section 212. All of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Winnetka, Illinois at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1966 with the district director of internal revenue, Chicago, Illinois. On November 12, 1949, Morris Kozak (hereinafter referred to as petitioner) and Pearl Kozak participated in a purported marriage ceremony in Chicago, Illinois. The marriage ceremony was performed by an orthodox Rabbi of the Jewish faith. Morris Kozak and Pearl Kozak were first cousins and at the time of their marriage ceremony both of them knew that there was a serious question about their right to marry under Illinois law. Their marriage was in fact wholly null and void under applicable Illinois statutes. However, neither of them obtained proper legal advice, and neither fully understood the legal consequences of their conduct. Both Morris and Pearl Kozak assumed that their marriage by an orthodox Rabbi was valid *167 and after the purported marriage ceremony, they lived and cohabited together in Chicago, Illinois, as husband and wife until February 27, 1962, when they separated. Prior to September 1957, petitioner owned or controlled all of the stock of Advance Neon Signs, Inc., an Illinois corporation. This corporation had been founded by petitioner in 1936, and he had devoted substantially all of his working life to its business. Since its creation in 1936, petitioner has been and is now the president and chief operating officer of Advance Neon Signs, Inc. During 1966, Morris Kozak received salary income of $57,300 from Advance Neon Signs, Inc., and other income of approximately $1,600 from investments. Prior to September 1957, Pearl Kozak importuned petitioner to make her a "partner" in all of his assets. Pearl Kozak threatened to terminate her relationship with petitioner if her requests were not met. During September of 1957, petitioner in an effort to maintain the marriage relationship, which both of them assumed existed, caused to be issued in the name of Pearl Kozak and delivered to her a certificate for 73 shares, representing 49 percent of the stock of Advance Neon Signs, Inc. *168 From that time to a date no earlier than December 2, 1966, she had custody and possession of the certificate. On December 27, 1963, petitioner obtained an annulment of his purported marriage to Pearl Kozak in the Superior Court of Cook County, Illinois. In 1964, petitioner filed a two count complaint in equity against Pearl Kozak in the Circuit Court of Cook County, Illinois, Docket No. 64 CH 1399. In Count I, he sought the severance based on the portion of the acquisition price he had contributed of numerous assets held in joint tenancy which had been accumulated during the time he and Pearl Kozak were living together as husband and wife with the funds of both parties. In Count II, he sought the rescission of his gift to Pearl Kozak of the certificate for the 73 shares in Advance Neon Signs, Inc., on the basis of a mutual mistake of fact and law. On or about December 2, 1966, the trial court entered its decree dividing the assets held in joint tenancy equally between petitioner and Pearl and rescinding the gift of the 73 shares of Advance Neon Signs, Inc. stock. Subsequently, Pearl Kozak carried an appeal to the Appellate Court of Illinois with 719 respect *169 to that portion of the decree rescinding the gift on the basis it was due to a mutual mistake of fact and law. The Appellate Court of Illinois affirmed the decree of the trial court in an opinion entered on August 6, 1968 reported at 240 N.E. 2d 155. On November 20, 1968, the Supreme Court of Illinois denied the petition of Pearl Kozak for leave to appeal the decision of the Appellate Court of Illinois. The United States Supreme Court has denied certiorari. During the year 1966, petitioner paid to the firm of Arnstein, Gluck, Weitzenfeld and Minow the sum of $4,237.70 as legal fees for litigation on his behalf before the Illinois trial court with respect to the division between Morris Kozak and Pearl Kozak of jointly held securities and other jointly held property and with respect to the recovery of the stock of Advance Neon Signs, Inc. On their joint income tax return for the year 1966, petitioners claimed as a deduction the sum of $4,237.70 labeled as "Attorney's fees and related expense for preservation and conservation of income producing property." Respondent in his notice of deficiency denied this claimed deduction with the explanation that it had not been *170 established that the attorney's fees constituted ordinary and necessary expenses paid for the production of income or for conservation or maintenance of income producting property. Petitioner contends that the legal fees paid by him in 1966 in connection with the adjustment of property rights with Pearl Kozak are deductible either as an ordinary and necessary business expense under section 162, or as a nonbusiness expenditure "for the management, conservation, or maintenance of property held for the production of income" under section 212. [2]
Respondent takes the position that the legal fees here in question were either of a personal nature or were a capital *171 expenditure and are not deductible. In resolving a question of whether legal fees are deductible business expenses or nondeductible capital or personal expenses, the Supreme Court has held that the nature of the expenditure is governed by the "origin and character of the claim with respect to which the expense was incurred." United States v. Gilmore, [3]372 U.S. 39, 49 (1963). The Supreme Court has applied the "origin of the claim test" adopted in the Gilmore case in Woodward v. Commissioner, 397 U.S. 572 (1970), and in United States v. Hilton Hotels Corporation, 397 U.S. 580 (1970), *172 [4] reversing the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit had based its decision on the "primary purpose" of the expenditure. Hilton Hotels Corp. v. United States, 410 F. 2d 194 (1969). In its opinion in the Hilton Hotels case the Supreme Court did not specifically reject the "primary purpose test" which had been used by a number of lower courts in resolving questions as to deductibility of litigation expenses. See Stass Reed, 55 T.C. 32 (1970), and Industrial Aggregate Company v. United States [60-2 USTC 9806], 284 F. 2d 639 (C.A. 8, 1960). The Supreme Court in its opinion in the Woodward case referred to the primary purpose test as one which "hardly draws a bright line and has provided a melange of decisions" that the Tax Court had noted would be "idle to suggest * * * can be reconciled," but later in the opinion stated that in some situations that "uncertain and difficult test may be the best that can be devised." Shortly after the decision of the Supreme Court in the Hilton Hotels case, the United States Court of Appeals for the Seventh Circuit, to which an appeal in the instant case would lie, adopted *173 the origin of the claim test in disallowing a deduction for an amount paid 720 in settlement of a suit for specific performance of a contract of sale of the taxpayer's assets. Anchor Coupling Company v. United States, 427 F. 2d 429 (C.A. 7, 1970). In its opinion the Court stated (at p. 431): Under the "primary purpose" test applied in previous cases these factors may be relevant in determining whether or not expenditures are deductible as payments made to protect ownership or to defend title to a capital asset. * * * The Government urges that the primary purpose test is no longer the appropriate test in light of the Supreme Court's decisions in United States v. Gilmore, * * *; Woodward v. Commissioner of Internal Revenue, * * *; and United States v. Hilton Hotels Corp., We agree * * * In the course of its opinion in the Anchor Coupling case the Court quoted the language of the Supreme Court in the Woodward case with respect to the "primary purpose" test which we have in part quoted. *174 The extent to which the "primary purpose" of an expenditure is relevant in determining its deductibility we need not decide, since it is now settled that the deductibility of legal fees is dependent upon the origin of the claim that resulted in the litigation, If we consider that the origin of petitioner's claim against Pearl Kozak is personal in nature or is in the nature of a capital expenditure to acquire or defend title to a capital asset, the conclusion follows that the legal fees paid in connection with that litigation are deductible regardless of the "primary purpose" of the litigation. United States v. Gilmore, supra; Anchor Coupling Company v. United States, supra. Respondent takes the position that the legal fees here in question were either of a personal or capital nature and hence nondeductible, relying on the Gilmore case and United States v. Patrick, 372 U.S. 53 (1970). Petitioner argues that this case is distinguishable from the Gilmore and Patrick cases in that those cases disallowed legal fees incurred in reaching a financial settlement incident to a divorce and held that the personal element inherent to the divorce litigation *175 predominated the taxpayer's motive or desire to protect income-producing property, whereas the annulment issue was fully settled prior to the litigation concerning the property interest and was in no way involved. The critical issue is not whether the personal element inherent to the litigation predominates the taxpayer's motive to protect income-producing property, but rather, whether the object of the litigation has its origin in the taxpayer's profit-seeking activities. United States v. Gilmore, supra, at 49. This is made patently clear in United States v. Patrick, supra at 55 et seq., where, although there had been an allocation of legal fees between the divorce action and the property settlement, the entire amount was disallowed as having its origin in the marital relationship rather than in any profit-making activity. The mere fact that the issues of the marital status and the property rights of the parties were not coterminously decided does not alter the origin or character of petitioner's claim against Pearl Kozak. See Meyer J. Fleischman, 45 T.C. 439(1966). *176 The record shows that Pearl Kozak came into possession of the jointly held bank accounts and securities, as well as the 73 shares of stock of Advance Neon Signs, Inc., by reason of the purported marriage relationship and that petitioner's claim arose out of that relationship. Both petitioner and Pearl Kozak were under a mutual mistake of fact and law as to the legal status of that relationship. However, this mutual mistake does not alter the fact that the origin of petitioner's claim was his purported marital relationship with Pearl Kozak. The judgment petitioner obtained against Pearl Kozak provided for (1) the severance and recovery of his share of jointly owned bank accounts, stock, and other securities; (2) the severance and recovery of accumulated dividend and interest income; and (3) the recovery of the 73 shares of Advance Neon Signs, Inc. We conclude that the portion of the legal fees attributable to the severance and recovery of petitioner's share of jointly held property and the rescission of the gift of the 73 shares of Advance Neon Signs, Inc. are not deductible. United States v. Gilmore, supra, and Anchor Coupling Company v. United States, supra. *177 The numerous cases cited by petitioner in support of his contention that the legal fees incurred by him are fully deductible were either decided under the primary purpose test or were based on a finding that the origin of the claims emanated from the taxpayer's profit-seeking activity. Those cases that found the "origin of the claims" to be profit-making activity are distinguishable from the instant case on a factual 721 basis. The facts in the instant case are not substantially distinguishable from the facts in the Gilmore and Patrick cases. Legal fees incurred in the recovery of income which has been earned but not received by a taxpayer are deductible as ordinary and necessary expenses under section 212. William A. Falls, 7 T.C. 66 (1946). See also, Section 1.212-1 (k), Income Tax Regs.[5] Therefore, that portion of the legal fees paid by petitioner, if any, attributable to the recovery of the accumulated dividend and interest income from Pearl Kozak would be deductible. There is no evidence in the record reflecting an allocation of the *178 legal fees incurred to (1) the severance and recovery of jointly held bank accounts and securities; (2) the severance and recovery of accumulated dividend and interest income; and (3) recovery of the 73 shares of Advance Neon Signs, Inc. In the absence of such evidence we have carefully reviewed the record to determine if it contains any basis upon which we might make an allocation. The record contains no such evidence. The record does not show the precise value of the jointly held assets or any indication of the value of 73 shares of Advance Neon Signs, Inc. stock. If any portion of the legal fees was paid for recovery of income, it appears from this record that the amount thereof might be de minimis. In any event petitioner has failed to prove that any amount of the fees is allocable to recovery of income. Petitioner argues in the alternative that if we conclude that the legal fees incurred in litigating his property rights with Pearl Kozak are not deductible expenses we should hold them to be capital expenditures which should be added to the basis of the recovered property. The record shows that the legal fees were in part paid to have a gift of stock rescinded so that petitioner *179 could recover title to that stock and were paid in part to have jointly held assets severed so that petitioner could obtain separate title to his portion of the assets. This litigation was in the nature of an action to perfect title to property or to recover property even though the "origin of the claim" was in the marital relationship between petitioner and Pearl Kozak. However, since the basis of the property is not at issue before us we do not deem it necessary to pass on petitioner's alternative contention. United States v. Gilmore, supra, at 52, and United States v. Patrick, supra, at 57. *180 We conclude that the legal fees paid by petitioner in 1966 in connection with litigating his property rights are not deductible as ordinary and necessary business expense or expense for the conservation or management of income-producing property and petitioner has failed to show that any part of those fees was paid for the production of income. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Reveme Code of 1954.↩
2. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax.↩
3. United States v. Gilmore, 372 U.S. 39 (1963) involved the disallowance of a deduction for attorney fees incurred by the husband in defense of his wife's community property claims in connection with their divorce, and was decided under the 1939 Code. United States v. Patrick, 372 U.S. 53↩ (1963), decided at the same time as Gilmore, involved the deduction of attorney fees incurred in negotiating and effecting a property settlement agreement incident to a divorce, and was decided under the 1954 Code.
4. Both Woodward v. Commissioner, 397 U.S. 572 (1970) and United States v. Hilton Hotels Corporation, 397 U.S. 580↩ (1970), involved the issue of whether litigation expenses in contesting appraisals were deductible as ordinary and necessary business expense or were nondeductible capital expenditures.
5. Sec. 1.212-1(k), Income Tax Regs., provides as follows: (k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. * * *↩