ESTATE OF PLATT W. DAVIS, DECEASED, JANET H. DAVIS, EXECUTRIX, AND JANET H. DAVIS, SURVIVING SPOUSE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6603–81.     Filed September 22, 1982.

*Howard H. Gano*, for the petitioners.
*David W. Johnson*, for the respondent.

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $4,533 in petitioners' Federal income tax for 1977. The issues for decision are whether petitioners are entitled to deductions for legal fees incurred (1) in litigation affecting their right to share in the Estate of Howard R. Hughes, Jr., deceased, and (2) in obtaining advice on whether they should put their separate assets in a revocable trust.

### FINDINGS OF FACT

Janet H. Davis (sometimes referred to herein as petitioner) was a legal resident of Houston, Tex., when the petition was

filed. She was the wife of Platt W. Davis during 1977, and for that year they filed a joint Federal income tax return with the Internal Revenue Service Center, Austin, Tex. Platt W. Davis died on January 27, 1979, and Janet H. Davis, along with Platt Davis III and Richard Davis, was appointed coexecutrix of the Estate of Platt W. Davis.

On the 1977 joint income tax return of petitioner and Mr. Davis, they claimed "miscellaneous deductions" in the total amount of $8,772 as follows:

| | |
|---|---:|
| Legal fees incurred to protect interest in property | $8,224 |
| Safe–deposit box rental | 54 |
| Professional fees | 494 |
| Total | 8,772 |

In the notice of deficiency, respondent disallowed the deduction of $8,224 claimed as legal fees and $18 of the $54 claimed for safe-deposit box rental. Petitioner concedes the $18 disallowance for safe-deposit box rental.

Petitioner and her husband paid legal fees in the following amounts on the dates indicated:

| | Payee | Amount | Date |
|---|---|---:|---|
| (a) | Vinson & Elkins | $2,003.12 | Oct. 24, 1977 |
| (b) | Estate of James Patrick Houstoun | 78.44 | Feb. 3, 1977 |
| (c) | Andrews, Kurth, Campbell & Jones | 5,802.82 | Nov. 27, 1977 |
| (d) | Estate of James Patrick Houstoun | 161.59 | June 23, 1977 |
| (e) | Reimbursement of payments | (6.15) | December 1977 |
| (f) | Sewell, Junell & Riggs | 150.00 | Jan. 29, 1977 |
| | Total amount paid | 8,189.82 | |

Petitioner concedes the $34.18 difference between the legal fees deduction claimed on the return and the amount here shown as paid.

The disputed legal fees were incurred in connection with the Estate of Howard R. Hughes, Jr., deceased. Mr. Hughes left some heirs related to him through his mother and other heirs related through his father. Related to Mr. Hughes through his mother were three branches of the family—the Houstouns, the Lummises, and the Ganos. Petitioner Janet H. Davis was a first cousin of Mr. Hughes through the Houstoun branch of the family. After Mr. Hughes' death, Annette Gano Lummis and William R. Lummis were appointed as coadministrators of the estate in Texas by the Probate Court in Harris County;

petitioner was adjudicated by the Probate Court to be one of the legal heirs of the estate under the laws of Texas.

Proceedings were instituted for the administration of Mr. Hughes' estate or assets thereof in California, Nevada, Louisiana, Delaware, and the Bahamas, as well as in Texas. A dispute arose as to whether Mr. Hughes was domiciled at his death in California, Nevada, or Texas. Because the laws of the several States on taxation and descent and distribution in the case of intestacy differ, the interests of some of Mr. Hughes' heirs or potential heirs might be affected by the determination of the location of his domicile.

Further, shortly after Mr. Hughes' death, numerous purported wills were offered for probate. More than 100 purported wills were filed for probate in Nevada alone. Although many of these wills were summarily denied probate, others produced extensive litigation.

William R. Lummis, one of the heirs who had worked for Mr. Hughes and for his corporation, Hughes Tool Co., recommended that the Gano and the Houstoun heirs retain a law firm, Vinson & Elkins, to work out a settlement agreement among themselves and with the paternal heirs, who were represented by California lawyers. Under the terms of the agreement as finally developed, the maternal and paternal heirs agreed that William R. Lummis would represent all of them in connection with the estate for a period of 10 years. They also agreed upon a formula for the ultimate division of the estate, regardless of which jurisdiction is determined to have been Mr. Hughes' domicile at his death.

The payment of $2,003.12 on October 24, 1977 (item (a) in the foregoing table), to Vinson & Elkins was part of petitioner's share of the fee for that firm's services in working out the settlement agreement. The payment of $78.44 (item (b) in the table) to the Estate of James Patrick Houstoun represented reimbursement to the Houstoun estate for the remainder of petitioner's share of the Vinson & Elkins fee.

On October 1, 1977, Mr. Hughes' maternal heirs entered into an agreement with a law firm, Andrews, Kurth, Campbell & Jones (Andrews-Kurth) to continue the prosecution of their claims to the estate on a contingent fee basis. Under the terms of the agreement, the maternal heirs agreed to reimburse Andrews-Kurth for out-of-pocket expenses in connection with

various lawsuits and to share any distribution of the estate in accordance with an agreed formula. The principal lawsuit handled by the firm prior to and during 1977 was with respect to the so-called "Mormon" or "Dummar" will, which named Noah Dietrich as the executor and which was ultimately found to be a forgery. Another lawsuit was filed with respect to a so-called lost will which named the Hughes Miami Medical Institute as the sole beneficiary of Mr. Hughes' estate. Certain other lawsuits have been filed. The $5,802.82 payment to Andrews-Kurth (item (c) in the above table) represents petitioner's share of that law firm's out-of-pocket expenses totaling $103,000 in connection with those lawsuits prior to October 1, 1977.

Summa Corp., an outgrowth of the old Hughes Tool Co. which held a large part of Mr. Hughes' assets, was organized in Delaware, and, therefore, administration proceedings with respect to the Hughes estate were instituted in that State. The $161.59 payment to the Estate of James Patrick Houstoun on June 23, 1977 (item (d) in the above table), was reimbursement to that estate of petitioner's share of the fee of Prickett, Ward, Burt & Sanders of Wilmington, Del., for legal services in connection with those proceedings. Of this sum, $6.15 was refunded in December 1977 as an overpayment (item (e) in the above table).

Sometime after Mr. Hughes died, most of the family members on his mother's side of the family considered the advisability of setting up some type of revocable, grantor, inter vivos trust to protect their own assets from involvement with the Hughes estate and its complications. Some of them had substantial estates, and they were concerned that their individual estates be preserved from entanglement with the Hughes estate litigation. Petitioner paid Sewell, Junell & Riggs $150 (item (f) in the above table) on January 29, 1977, for advice on whether she should create such a trust and for drafting a revocable inter vivos trust agreement. The trust was not created.

In the notice of deficiency, as explained above, respondent disallowed the disputed legal expenses. Petitioner has alleged in the petition that she incurred the expenses in order to protect her interest in the Hughes estate.

## OPINION

Petitioner's principal argument is based on section 212(2)[1] which authorizes a deduction for ordinary and necessary expenses paid or incurred "for the management, conservation, or maintenance of property held for the production of income." Petitioner contends that, because Mr. Hughes died intestate, she became entitled immediately to a share of his estate, and she incurred the disputed legal fees in the conservation and protection of her right to that share. Respondent maintains that the expenses do not meet the requirements of section 212(2).

We agree that the legal expenses are not deductible under section 212(2).

Prior to the adoption of the predecessor of section 212 in 1942,[2] the only comparable Code provision in the tax law was the predecessor of section 162(a) which allows deductions for ordinary and necessary expenses "in carrying on any trade or business." By the 1942 amendment which later became section 212, deductions allowable for expenses incurred in carrying on a trade or business were extended to certain enumerated nonbusiness situations, including expenditures for the "management, conservation, or maintenance of property held for the production of income." "[E]xcept for the requirement of being incurred in connection with a trade or business," however, a deduction under section 212 "is subject * * * to all the restrictions and limitations that apply in the case of the deduction under * * * [section 162(a)] of an expense paid or incurred in carrying on any trade or business." H. Rept. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 372, 430; S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 504, 571. Thus, an expenditure is not deductible under section 212 if it is a personal expense under section 262 (*United States v. Gilmore,*

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect during the tax year in issue, unless otherwise noted.

SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

\* \* \* \* \* \* \*

(2) for the management, conservation, or maintenance of property held for the production of income;

[2] Sec. 121(a), Revenue Act of 1942, ch. 619, Pub. L. 753, 56 Stat. 798, 819.

372 U.S. 39 (1963)), or a capital expenditure under section 263 (*Woodward v. Commissioner*, 397 U.S. 572 (1970)); *United States v. Hilton Hotels Corp.*, 397 U.S. 580 (1970).

The line of demarcation between currently deductible and capital expenditures is often a shadowy one and "It would be idle to suggest that all the authorities in this field can be reconciled." *Ruoff v. Commissioner*, 30 T.C. 204, 208 (1958), revd. on other grounds 277 F.2d 222 (3d Cir. 1960). For guidance in drawing the line with respect to litigation expenses in cases involving the acquisition, retention, or disposition of capital assets, the origin and character of the claim, not the purpose for which the claim is prosecuted, are the controlling criteria. *United States v. Gilmore, supra* at 49;[3] *Woodward v. Commissioner, supra* at 577. This Court has also applied the origin and character standard in cases involving the defense or perfection of title to property. *Reed v. Commissioner*, 55 T.C. 32, 39–41 (1970).

Under the origin and character standard, it is clear that petitioner's legal expenses were not incurred in the conservation or protection of income-producing property. In the context of section 212(2), the term "conservation of property" seems "to refer to operations performed with respect to the property itself, such as safeguarding or upkeep." *United States v. Gilmore, supra* at 44. The term "imparts the idea of utilization and preservation of specific property owned and used by the taxpayer." *Sturgeon v. McMahon*, 155 F. Supp. 628, 629 (S.D. N.Y. 1957), affd. per curiam 255 F.2d 685 (2d Cir. 1958).

At the time petitioner incurred the disputed litigation legal fees, she neither owned nor used any of the Hughes estate; she "held" none of it "for the production of income" or otherwise

---

[3]In *United States v. Gilmore*, 372 U.S. 39 (1963), the taxpayer sought to deduct attorneys' fees incurred in an action for divorce to oppose his wife's claim to certain income-producing property. Rejecting the taxpayer's contention that the test for deductibility was the primary purpose for which the fees were incurred, the Court said (at 49):

"The origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was 'business' or 'personal' and hence whether it is deductible or not * * * "

In *Woodward v. Commissioner*, 397 U.S. 572 (1970), and *United States v. Hilton Hotels Corp.*, 397 U.S. 580 (1970), the Supreme Court extended the "origin of the claim" test to expenses incurred for appraisal of stock involved in merger and dissenting shareholder disputes, holding such expenses to be capital rather than currently deductible expenditures.

within the meaning of section 212. The origin and character of the claim petitioner asserted in the Hughes estate litigation was not with respect to property that she "held" but with respect to property which she hoped to acquire or to which she hoped to perfect title. As detailed in our findings, her right to a share of the estate depended upon, among other things, the determination of Mr. Hughes' domicile at his death, the applicable State law, and the validity of the numerous alleged wills offered for probate.

Petitioner's legal fees thus were not incurred in the conservation of property she "held," within the meaning of section 212. They were, rather, incurred in an effort to establish her right to, or perfect her title to, assets, and the expenditures are not deductible under section 212. They must be capitalized as part of her basis for any property she ultimately acquires or to which her title is finally perfected. *Boagni v. Commissioner*, 59 T.C. 708, 712 (1973).[4]

Taking into account the varied claims to and against the estate, the instant case is analogous to *Grabien v. Commissioner*, 48 T.C. 750 (1967); that case involved legal fees incurred by a taxpayer to challenge an executrix's demands for extraordinary compensation and for an accounting for an estate in which a decedent's will called for the conversion of the estate to cash and its distribution to the legatees. Denying the deductibility of the fees under section 212, this Court said (at 753):

> Petitioner's interest in the estate was essentially a money claim dependent in amount on the amount of cash in the estate after the conversion to cash of the estate's assets and after allowance of all expenses of administration. A mere money claim of this sort is not property held for the production of income and petitioner never held the property for the production of income or otherwise until after the determination of the Probate Court with respect to the disputed extraordinary fees and distribution of the estate assets. The expense here in issue is analogous to an expense of perfecting or protecting title to property and not deductible as an expense of managing, maintaining, or conserving property.

For other cases denying a section 212 deduction for legal fees incurred in litigation to establish a right to participate in an

---

[4]If she ultimately recovers nothing from the Hughes estate, she may be entitled to a capital loss deduction, but we need not decide that issue here.

estate, see *Bliss v. United States*, 179 Ct. Cl.353, 373 F.2d 936 (1967); *Manufacturers Hanover Trust Co. v. United States*, 160 Ct. Cl. 582, 312 F.2d 785, 788 (1963); *Brown v. Commissioner*, 215 F.2d 697, 700–701 (5th Cir. 1954), affg. in part and revg. in part 19 T.C. 87, 91–92 (1952); *Wilson v. Commissioner*, 37 T.C. 230, 234 (1961); *Hendrick v. Commissioner*, 35 T.C. 1223, 1234 (1961); *Beck v. Commissioner*, 15 T.C. 642, 669–670 (1950), affd. per curiam 194 F.2d 537 (2d Cir. 1952); see also sec. 1.212–1(k), Income Tax Regs.[5]

The issue as to the deductibility of the $150 fee paid to Sewell, Junell & Riggs for drafting an inter vivos, revocable trust instrument and consultation thereon requires the same conclusion but calls for a slightly different legal analysis. As a general rule, "advice on merely how to arrange title to income-producing property relates to neither the management nor the conservation of such property within the meaning of section 212." *Epp v. Commissioner*, 78 T.C. 801, 805 (1982); cf. *Schultz v. Commissioner*, 50 T.C. 688, 699–700 (1968), affd. per curiam 420 F.2d 490 (3d Cir. 1970). Again, however, the primary purpose of the expenditure is not the controlling criterion for determining deductibility; instead, the *Gilmore-Woodward* "origin and character" test is to be applied. Under that test, the $150 fee is not deductible.

The testimony is that petitioner consulted the attorneys on the need for segregating her and her husband's assets into a revocable trust because of the possibility that their already-owned property might become entangled in some way in the anticipated Hughes estate litigation. We interpret this to mean that petitioner was concerned that the Hughes litigation might include a lawsuit in which an adverse judgment might have to be satisfied in part from her and her husband's property.

The anticipated claims from which protection was sought by creating a trust thus did not arise from the management of already-owned property, which included stocks, bonds, savings accounts, and a subchapter S corporation,[6] or any of the

---

[5]Sec. 1.212–1(k), Income Tax Regs., in part provides:

"Expenses paid or incurred in protecting or asserting one's rights to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible."

[6]Respondent argues that petitioners failed to show that the assets to be protected were

activities in connection therewith from which petitioner and her husband derived income. Rather, the potential claims that prompted the consultations were expected possibly to arise from the Hughes litigation. Had claims against petitioner or her property actually arisen from her involvement in the Hughes estate, they would have been nondeductible as capital expenditures (sec. 263) or possibly personal expenses (sec. 262).[7] Measures taken to avoid claims against property cannot reasonably be distinguished, for the purposes of section 212, from litigation in the defense of such claims.

The reasoning of *United States v. Patrick*, 372 U.S. 53 (1963), involving the deductibility of legal fees incurred for working out a property settlement in a divorce proceeding is apposite. As part of the settlement, the taxpayer received stock in a publishing company, his employer; the taxpayer and his wife entered into a new lease of real estate to the publishing company, and they transferred their interests in this property to a trust. The lower courts reasoned that the legal fees were deductible under section 212(2) because the taxpayer incurred them to enable him to meet a marital obligation without depriving him of control over the publishing company from which he had earned his livelihood for many years. Analogizing the case to *United States v. Gilmore, supra*, which involved the deductibility of fees incurred in divorce litigation over property, and holding that the fees were not deductible under section 212(2), the Supreme Court said (at 57):

> We find no significant distinction in the fact that the legal fees for which deduction is claimed were paid for arranging a transfer of stock interests, leasing real property, and creating a trust rather than for conducting

---

"property held for the production of income" within the meaning of sec. 212(2). The 1977 joint income tax return, however, shows that petitioner and her husband had interest income of $86,638, dividend income of $8,488, and income of $14,858 from Production Die Casting Co., a subch. S small business corporation. We think it a reasonable inference that the legal advice was sought with respect to the property producing this income.

[7] It is unclear exactly what claims against her property petitioner hoped to forestall by creating the trust. If a claim arose because of petitioner's efforts to establish or perfect a right to part of the Hughes estate, then the expenses in defending the claim would be capital ones, analogous to the fees paid to Andrews-Kurth. If, on the other hand, the dreaded claim stemmed simply from the fact that petitioner was related to Mr. Hughes, its origin in family connections might render it a "personal" expense. In either case, expenses connected with such a claim would be nondeductible. It is also unclear from the record why petitioner thought placing the property in a revocable trust would protect it from creditors; perhaps legal advice that it would not explains why a trust was not created.

litigation. * * * Although nominally an agreement for the purchase of the wife's property, it served ultimately to protect respondent's [the taxpayer's] income-producing property from an assertion of his wife's latent marital rights. It would be unsound to make deductibility turn on the nature of the measures taken to forestall a claim rather than the source of the claim itself.

In the *Patrick* case, the source or origin of the claim against which protection was sought was the taxpayer's marital obligations. In the instant case, the source or origin of the claim against which protection was sought was petitioner's connection with the Hughes estate, which was either capital or personal in character, depending on the character of the particular claim. While the *Patrick* case involved the denial of a deduction for a personal expenditure under section 262, we think the same reasoning applies in this case and requires denial of the claimed deduction regardless of whether it is viewed as a capital expenditure under section 263[8] or as a personal expense under section 262. We conclude, therefore, that the $150 fee paid to Sewell, Junell & Riggs is not deductible.

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[8]The question in *Anchor Coupling Co. v. United States*, 427 F.2d 429 (7th Cir. 1970), was whether a settlement payment constituted an ordinary and necessary business expense or a capital outlay. In holding the payment a capital expenditure, the Seventh Circuit relied particularly on *United States v. Gilmore, supra,* which, as indicated above, distinguished between a business expense and a nondeductible personal expense. To the taxpayer's argument that *Gilmore* was inapplicable, the Seventh Circuit wrote (at 433) that "Although the two questions [ordinary and necessary v. capital expenses, business v. personal expenses] are admittedly different, substantially the same problems arise in each determination"; and the court concluded that the capital expenditure question and the personal expense question should be treated in a similar fashion.